1  EILEEN M. DECKER
   United States Attorney
2  THOMAS D. COKER
   Assistant United States Attorney
3  Chief, Tax Division
   ROBERT F. CONTE (Cal. Bar No. 157582)
4  Assistant United States Attorney
       300 North Los Angeles Street
5      Federal Building, Room 7211
       Los Angeles, California  90012
6      Telephone: (213) 894-6607
       Facsimile: (213) 894-0115
7      E-mail: robert.conte@usdoj.gov
   JORGE ALMONTE
8  Assistant Chief (DC Bar No. 481391)
   JASON M. SCHEFF
9  Trial Attorney (NY Bar No. 5188701)
   U.S. Department of Justice, Tax Division
10     601 D Street, N.W., Room 7548
       Washington, D.C.  20004
11     Telephone: (202) 305-3676
       Facsimile: (202) 616-1786
12     E-mail: jorge.almonte@usdoj.gov
             jason.m.scheff@usdoj.gov
13

14              UNITED STATES DISTRICT COURT

15          FOR THE CENTRAL DISTRICT OF CALIFORNIA

16                    WESTERN DIVISION

17

18  UNITED STATES OF AMERICA,        No. CR  CR 16 00152

19              Plaintiff,           PLEA AGREEMENT FOR DEFENDANT
                                     DAVID SHAHROKH AZARIAN
20              v.

21  DAVID SHAHROKH AZARIAN,
       aka "Shahrokh Azarian,"
22
                Defendant.
23

24

25       1.   This constitutes the plea agreement between DAVID

26  SHAHROKH AZARIAN, a/k/a Shahrokh Azarian, ("defendant") and the

27  United States Attorney's Office for the Central District of

28                            1

1  California and the U.S. Department of Justice, Tax Division

2  (collectively the "USAO") in the above-captioned case.  This

3  agreement is limited to the USAO and cannot bind any other

4  federal, state, local, or foreign prosecuting, administrative,

5  or regulatory authorities.

6                       DEFENDANT'S OBLIGATIONS

7      2. Defendant agrees:

8          a) To give up the right to indictment by a grand jury

9  and, at the earliest opportunity requested by the USAO and

10  provided by the Court, appear and plead guilty to a one-count

11  Information in the form attached to this agreement or a

12  substantially similar form, which charges defendant with willful

13  failure to file a report of foreign bank and financial accounts

14  ("FBAR"), in violation of 31 U.S.C. §§ 5314 and 5322(a), and 31

15  C.F.R. §§ 1010.350, 1010.306(c, d), and 1010.840(b).

16          b) To not contest the facts agreed to in this

17  agreement.

18          c) To abide by all agreements regarding sentencing

19  contained in this agreement.

20          d) To appear for all court appearances, surrender as

21  ordered for service of sentence, obey all conditions of any

22  bond, and obey any other ongoing court orders in this matter.

23          e) To not commit any crime; however, offenses that

24  would be excluded for sentencing purposes under the United

25  States Sentencing Guidelines ("U.S.S.G." or "Sentencing

26  Guidelines") § 4A1.2(c) are not within the scope of this

27  agreement.

28                              2

1      f) To be truthful at all times with Pretrial Services,
2  the United States Probation Office, and the Court.

3      g) To pay the applicable special assessment at or
4  before the time of sentencing unless defendant lacks the ability
5  to pay and submits a completed financial statement on a form to
6  be provided by the USAO.

7      h)  To make full restitution for the losses caused by
8  defendant's activities.  Defendant will pay restitution prior to
9  sentencing, based on his financial ability to pay.  Defendant
10  will not seek the discharge of any restitution obligation, in
11  whole or in part, in any present or future bankruptcy
12  proceeding.

13      i)  To cooperate with the IRS in the civil
14  examination, determination, assessment and collection of income
15  taxes related to defendant's 2003 through 2009 individual income
16  tax returns and any related corporate/entity tax returns, and
17  further agrees not to conceal, transfer, or dissipate funds or
18  property that could be used to satisfy such taxes, penalties and
19  interest.

20      j) To give up any and all objections that could be
21  asserted to the Examination Division of the Internal Revenue
22  Service ("IRS") receiving materials or information obtained
23  during the criminal investigation of this matter, including
24  materials and information obtained through grand jury subpoenas
25  and other legal process.

26      k) That defendant is liable for the civil fraud
27  penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663,

28                                3

on the understatement of his individual income taxes for calendar years 2003 through 2009.  Defendant agrees that a civil penalty under 26 U.S.C. § 6663 may be assessed against him.

l) That nothing in this agreement shall preclude or bar the IRS from the assessment and/or collection of any additional tax liability, including interest and penalties, determined to be due and owing from defendant by the IRS for the years 2003 through 2009.

m) That, in order to resolve defendant's civil liability for failing to file a Report of Foreign Bank and Financial Accounts, Forms TD F 90-22.1, and other foreign information reporting obligations under the United States law, for calendar year 2009, defendant will pay a civil penalty to the IRS equal to fifty percent of the highest total balance of each of the foreign financial accounts in which defendant had a financial interest, or over which defendant had signature or other authority, during calendar year 2009.  Based upon information now available to the USAO (including representations by defendant), the parties agree that the civil penalty to be paid shall not be less than $951,607, representing fifty percent of the balance in an account in Switzerland in which defendant had a financial interest, or over which defendant had signature authority, as of May 2009.  Defendant agrees to pay the civil penalty prior to sentencing to the United States Treasury, through the U.S. Department of Justice, Tax Division.

n) To agree to and not oppose the imposition of the following conditions of probation or supervised release: that

4

1   defendant shall cooperate with the payment of all delinquent
2   federal and state taxes, and any related penalties and interest
3   that may be imposed; that defendant shall truthfully and timely
4   file and pay taxes during the period of supervised release; and
5   that defendant will show proof to the Probation Officer of
6   compliance with the aforementioned conditions of supervised
7   release.

8                        THE USAO'S OBLIGATIONS
9       3.   The USAO agrees to:
10          a) Not contest the facts agreed to in this agreement.
11          b) Abide by all agreements regarding sentencing
12  factors contained in this agreement.
13          c) At the time of sentencing, provided that defendant
14  demonstrates an acceptance of responsibility for the offense up
15  to and including the time of sentencing, recommend a two-level
16  reduction in the applicable Sentencing Guideline offense level,
17  pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,
18  move for an additional one-level reduction if available under
19  that section.
20          d) Not further criminally prosecute defendant for
21  violations arising out of defendant's conduct described in the
22  agreed-to factual basis set forth below.  Defendant understands
23  that the USAO is free to criminally prosecute defendant for any
24  other unlawful past conduct or any unlawful conduct that occurs
25  after the date of this agreement.  Defendant agrees that at the
26  time of sentencing, the Court may consider the uncharged conduct
27  in determining the applicable Sentencing Guidelines range, the

28                                  5

1   propriety and extent of any departure from that range, and the
2   sentence to be imposed after consideration of the Sentencing
3   Guidelines and all other relevant factors under 18 U.S.C. §
4   3553(a).

### NATURE OF THE OFFENSE

6       4.   Defendant understands that for defendant to be guilty
7   of the crime charged in count one of the Information, a
8   violation of 31 U.S.C. §§ 5314 and 5322(a), and 31 C.F.R. §§
9   1010.350, 1010.306(c, d), and 1010.840(b), the following must be
10  true:

11      a) Defendant must have had a financial interest in, or
12  signature or other authority over, a financial account in a
13  foreign country with an aggregate value of more than $10,000 at
14  any time during the calendar year 2009;

15      b) Defendant must have failed to file, with the Department
16  of Treasury, a Report of Foreign Bank and Financial Accounts
17  (Form TD F 90-22.1 "FBAR"), for the calendar year 2009, on or
18  before June 30 of the following calendar year; and

19      c) In failing to file the FBAR for the calendar year 2009,
20  defendant must have acted willfully.

21      Defendant admits that he is, in fact, guilty of the offense
22  as described in count one of the Information.

### PENALTIES AND RESTITUTION

24      5.   Defendant understands that the statutory maximum
25  sentence that the Court can impose for a violation of 31 U.S.C.
26  §§ 5314 and 5322(a) and 31 C.F.R. §§ 1010.350, 1010.306(c, d),
27  and 1010.840(b) is:   5 years imprisonment; a 3-year period of

28                                      6

supervised release; a fine of $250,000.00 or twice the gross gain or loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.00.  Defendant agrees to pay the special assessment at or before the time of sentencing.

6.   Defendant agrees to make full restitution for the losses caused by defendant's activities.  Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest and penalties that defendant owes to the United States based upon the losses caused by defendant's activities; (b) may order defendant to pay any additional fines that defendant owes to the United States; and (c) may order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.  The parties agree that the restitution that should be ordered shall not be less than $197,840 for the years 2003 through 2009.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum as stated above.

1       8.   Defendant understands that, by pleading guilty,
2  defendant may be giving up valuable government benefits and
3  valuable civic rights, such as the right to vote, the right to
4  possess a firearm, the right to hold office, and the right to
5  serve on a jury.  Defendant understands that once the Court
6  accepts defendant's guilty plea, it will be a federal felony for
7  defendant to possess a firearm or ammunition.  Defendant
8  understands the conviction in this case may subject defendant to
9  various collateral consequences, including but not limited to,
10  revocation of probation, parole, or supervised release in
11  another case, and suspension or revocation of a professional
12  license.  Defendant understands that unanticipated collateral
13  consequences will not serve as grounds to withdraw defendant's
14  plea of guilty.

15       9.   Defendant understands that, if defendant is not a
16  United States citizen, the felony conviction in this case may
17  subject defendant to:  removal, also known as deportation, which
18  may, under some circumstances, be mandatory; denial of
19  citizenship; and denial of admission to the United States in the
20  future.  The Court cannot, and defendant's attorney also may not
21  be able to, advise defendant fully regarding the immigration
22  consequences of the felony conviction in this case.  Defendant
23  understands that unexpected immigration consequences will not
24  serve as grounds to withdraw defendant's guilty plea.

25  ///

26

27

28                         8

## FACTUAL BASIS

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree that the statement of facts contained in Attachment A and fully incorporated herein is sufficient to support defendant's guilty plea to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in the paragraphs below, but is not meant to be a complete recitation of all the facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

11.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).   Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree and stipulate to the following applicable Sentencing Guideline factors, utilizing the U.S.S.G. in effect on November 1, 2015:

a) Count one of the Information is governed by U.S.S.G. § 2S1.3.

b) Because the offense was committed for the purposes of violating the Internal Revenue laws and because the resulting offense level is greater under Chapter Two, Part T, than that determined by operation of U.S.S.G. § 2S1.3(a-b), the most appropriate guideline from Chapter Two, Part T, applies, pursuant to U.S.S.G. § 2S1.3(c)(1).

c) The most appropriate guideline from Chapter Two, Part T, is U.S.S.G. § 2T1.1.  The base offense level is determined from Section 2T4.1 (Tax Table) corresponding to the tax loss.

d) Because the tax loss is more than $100,000, but not more than $250,000, the base offense level applicable to count one of the Information is 16, pursuant to U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(F).

e) Because the offense involved sophisticated means, the offense level is increased by 2 levels, pursuant to U.S.S.G. § 2T1.1(b)(2).

| | | |
|---|---|---|
| Base Offense Level: | 16 | [§§ 2T1.1 & 2T4.1] |
| Specific Offense Characteristics:<br>    Sophisticated Means | 2 | [§ 2T1.1(b)(2)] |
| Downward Departure:<br>    Acceptance of<br>    Responsibility | (3) | [§§ 3E1.1(a), (b)] |
| **Total Offense Level:** | **15** | |

1    The USAO will agree to a two-level downward adjustment for

2    acceptance of responsibility (and, if applicable, move for an

3    additional one-level downward adjustment under U.S.S.G. §

4    3E1.1(b)) only if the conditions set forth under paragraph 2,

5    above, are met.

6    Subject to paragraph 24 below, defendant and the USAO agree

7    not to seek, argue, or suggest in any way, either orally or in

8    writing, that any other specific offense characteristics,

9    adjustments, or departures relating to the calculation of the

10   offense level under the Guidelines be imposed.

11   Defendant reserves the right to argue for a more lenient

12   sentence from the sentence suggested under the Sentencing

13   Guidelines by arguing factors set forth in 18 U.S.C. §§

14   3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).  The USAO

15   reserves the right to oppose these arguments, and may argue that

16   the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2),

17   (a)(3), (a)(6), and (a)(7) support a term of imprisonment within

18   the applicable Sentencing Guidelines range, provided that the

19   total offense level used by the Court to determine the guideline

20   range is 15 or higher and defendant's criminal history category

21   is I.

22   Defendant agrees that if, after signing this agreement but

23   prior to sentencing, defendant were to commit an act, or the

24   USAO were to discover a previously undiscovered act committed by

25   defendant prior to signing this agreement, which act, in the

26   judgment of the USAO, constituted obstruction of justice within

27

28                                   11

1  the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek
2  the enhancement set forth in that section.

3       13.  Defendant understands that there is no agreement as to
4  defendant's criminal history or criminal history category.

5                    WAIVER OF CONSTITUTIONAL RIGHTS

6       14.  Defendant understands that by pleading guilty,
7  defendant gives up the following rights:

8            a) The right to persist in a plea of not guilty.

9            b) The right to a speedy and public trial by jury.

10           c) The right to be represented by counsel -- and if
11  necessary have the Court appoint counsel -- at trial.  Defendant
12  understands, however, that, defendant retains the right to be
13  represented by counsel -- and, if necessary, to have the Court
14  appoint counsel -- at every other stage of the proceeding.

15           d) The right to be presumed innocent and to have the
16  burden of proof placed on the government to prove defendant
17  guilty beyond a reasonable doubt.

18           e) The right to confront and cross-examine witnesses
19  against defendant.

20           f) The right to testify and to present evidence in
21  opposition to the charges, including the right to compel the
22  attendance of witnesses to testify.

23           g) The right not to be compelled to testify, and, if
24  defendant chose not to testify or present evidence, to have that
25  choice not be used against defendant.

26
27
28                                   12

h) Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### ADDITIONAL WAIVERS

15.  Defendant hereby consents to prosecution on the charge contained in the Information in the Central District of California and waives and gives up any right to:

a) Challenge such prosecution on the basis of venue or statute of limitations.

b) Seek the transfer of this action to another district.

### WAIVER OF APPEAL OF CONVICTION

16.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

### LIMITED MUTUAL WAIVER OF APPEAL

17.  Defendant agrees that, provided that the Court imposes a total term of imprisonment on the count of conviction within or below the range corresponding to a total offense level of 15 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and

13

terms of any restitution ordered, provided it requires payment of no more than $197,840; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318, 01-15, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b); and (g) any condition of probation or supervised release agreed to by defendant in paragraph 2, above.

18.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to a total offense level of 15 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $197,840.

RESULT OF WITHDRAWAL OF GUILTY PLEA

19.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's plea of guilty on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the

1  USAO choose to pursue any charge or any civil, administrative,
2  or regulatory action that was either dismissed or not filed as a
3  result of this agreement, then (i) any applicable statute of
4  limitations will be tolled between the date of defendant's
5  signing of this agreement and the filing commencing any such
6  action; and (ii) defendant waives and gives up all defenses
7  based on the statute of limitations, any claim of pre-indictment
8  delay, or any speedy trial claim with respect to any such
9  action, except to the extent that such defenses existed as of
10  the date of defendant's signing this agreement.

11                    EFFECTIVE DATE OF AGREEMENT

12       20.  This agreement is effective upon signature and
13  execution by defendant, defendant's counsel, and an attorney
14  authorized to represent the USAO.

15                      BREACH OF AGREEMENT

16       21.  Defendant agrees that if defendant, at any time after
17  the signature of this agreement and execution of all required
18  certifications by defendant, defendant's counsel, and an
19  attorney authorized to represent the USAO, knowingly violates or
20  fails to perform any of defendant's obligations under this
21  agreement ("a breach"), the USAO may declare this agreement
22  breached.  All of defendant's obligations are material, a single
23  breach of this agreement is sufficient for the USAO to declare a
24  breach, and defendant shall not be deemed to have cured a breach
25  without the express agreement of the USAO in writing.  If the
26  USAO declares this agreement breached, and the Court finds such
27  a breach to have occurred, then: (a) if defendant has previously

28                              15

1  entered a guilty plea pursuant to this agreement, defendant will
2  not be able to withdraw the plea of guilty, and (b) the USAO
3  will be relieved of all of its obligations under this agreement.
4      22.   Following the Court's finding of a knowing and willful
5  breach of this agreement by defendant, should the USAO elect to
6  pursue any charge or any civil, administrative, or regulatory
7  action that was not filed as a result of this agreement, then:
8          a) Defendant agrees that any applicable statute of
9  limitations is tolled between the date of defendant's signing of
10 this agreement and the commencement of any such action.
11         b) Defendant waives and gives up all defenses based on
12 the statute of limitations, any claim of pre-indictment delay,
13 or any speedy trial claim with respect to any such action,
14 except to the extent that such defenses existed as of the date
15 of defendant's signing this agreement.
16         c) Defendant agrees that: (i) any statements made by
17 defendant, under oath, at the guilty plea hearing (if such a
18 hearing occurred prior to the breach); (ii) the agreed-to
19 factual basis statement in this agreement; and (iii) any
20 evidence derived from such statements, shall be admissible
21 against defendant in any such action against defendant, and
22 defendant waives and gives up any claim under the United States
23 Constitution, any statute, Rule 410 of the Federal Rules of
24 Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure,
25 or any other federal rule, that the statements or any evidence
26 derived from any statements should be suppressed or are
27 inadmissible.
28                                16

## COURT AND PROBATION OFFICE NOT PARTIES

23. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24. Defendant understands and agrees that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not in error, although each party agrees to maintain its views that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's plea of guilty, and defendant will remain bound to fulfill all defendant's

17

obligations under this agreement.  Defendant understands that no one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

26.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        27.   The parties agree that this agreement will be

3    considered part of the record of defendant's guilty plea hearing

4    as if the entire agreement had been read into the record of the

5    proceeding.

6

7    AGREED AND ACCEPTED

8    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA

9    EILEEN M. DECKER

10   United States Attorney

11

12   _____          ___11/8/16_____
                                       Date
13   JORGE ALMONTE
     Assistant Chief
14   JASON M. SCHEFF
     Trial Attorney
15   U.S. Department of Justice
     Tax Division
16

17   THOMAS D. COKER
     Assistant United States Attorney
18   Chief, Tax Division
     ROBERT F. CONTE
19   Assistant United States Attorney

20

21   _____          10/10/2016
                                       Date
     DAVID SHAHROKH AZARIAN
22   Defendant

23                                     10/10/2016
                                       Date
24
     EDWARD M. ROBBINS, JR., Esq.
25   Counsel for Defendant
     DAVID SHAHROKH AZARIAN
26

27

28                                     19

## ATTACHMENT A- FACTUAL BASIS

(a)   At all times relevant to the Information, DAVID SHAHROKH AZARIAN (hereinafter "defendant"), resided in Newport Coast, California, and was a citizen of the United States of America.

(b)   At all times relevant to the Information, defendant was a United States taxpayer.  U.S. taxpayers who have a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular calendar year are required to file with the Internal Revenue Service ("IRS") a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR").  The FBAR for any calendar year is required to be filed on or before June 30 of the following calendar year.  The FBAR requires that the filer identify the financial institution with which the account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR is being filed.

(c) Beginning in or around April 1997, and continuing through at least in or about 2008, defendant had a financial interest in, and signature and other authority over, several undeclared accounts at UBS AG ("UBS") in Switzerland.  From in or about May 1994, until at least in or about 2009, defendant also had a financial interest in, and signature and other authority over, an undeclared account at Credit Suisse in Switzerland.  From at least in or about 1998 until at least in

or about 2009, the undeclared accounts in which defendant had a financial interest, and over which defendant had signature and other authority, had an aggregate value of more than $10,000.

(d) On or about April 7, 1997, defendant and his wife opened an undeclared account at UBS in their own names (the "First Undeclared Azarian UBS Account").  This account was a numbered account, meaning that only an account number, as opposed to defendant's name, appeared on account documents in order to minimize the amount of documents that associated defendant with the account.

(e) In order to secretly deposit money into the First Undeclared Azarian UBS Account and promote his efforts to evade the payment of taxes, defendant mailed numerous checks and money orders from the United States to his UBS Client Advisor in Switzerland.  In or about 2001, defendant sent over $469,000 in checks and money orders to the UBS Client Advisor, many in amounts less than $500 and using checks and money orders from numerous institutions.

(f) In or about April 2002, defendant opened a new numbered undeclared account at UBS (the "Second Undeclared Azarian UBS Account").  On account opening documents for the Second Undeclared Azarian UBS Account, defendant falsely listed that he resided in Israel when, in fact, he resided in California.  By in or about December 2007, the Second Undeclared Azarian UBS Account held approximately $850,000 in assets.

(g) In or about August 2008, in order to prevent his assets at UBS from being discovered, defendant opened an undeclared

account at Israeli Bank A (the "Israeli Bank A Azarian Account"), which he later partially declared.

(h)  On or about May 31, 1994, defendant and his wife opened an undeclared account at Credit Suisse in their own names (the "Undeclared Azarian Credit Suisse Account").  On account opening documents for the Undeclared Azarian Credit Suisse Account, defendant listed that he resided in California.

(i)  In or about May 2009, in order to prevent his assets at Credit Suisse from being discovered, defendant transferred funds to the Israeli Bank A Azarian Account.  Shortly before its closing in or about May 2009, the Undeclared Azarian Credit Suisse Account held approximately $1,903,214 in assets.

(j)  For each of the calendar years from at least 1998 through 2007, defendant filed and caused to be filed with the IRS a U.S. Individual Income Tax Return, Form 1040.  On each of these returns, defendant knowingly and willfully failed to report as income dividends, interest, and other income received by him in one or more bank, securities, and other financial accounts at UBS, Credit Suisse, and Israeli Bank A.  On Schedule B attached to each of these returns, defendant knowingly and willfully failed to disclose that he had an interest in or signature authority over a financial account in Switzerland when, in truth and in fact, and as defendant then and there well knew, he had an interest in and signature authority over a financial account in Switzerland.

(k) For each of the calendar years from at least 1998 through 2009, defendant failed to file, and failed to cause to

be filed, with the IRS an FBAR disclosing his signatory or other authority over his accounts at UBS and Credit Suisse, and later, his account at Israeli Bank A.

(l) On or about May 24, 2011, Special Agents with the U.S. Internal Revenue Service, Criminal Investigation Division ("IRS-CI") interviewed defendant. During this interview, defendant falsely stated that he had always reported his UBS accounts to the IRS. In fact, defendant reported an interest in a foreign account on Schedule B of his returns beginning only in 2008 and had never filed FBARs for those accounts. Defendant also falsely stated that he did not know a UBS Client Advisor with whom defendant had actually met and corresponded on numerous occasions.

(m) On or before the filing due dates listed below, in the Central District of California and elsewhere, defendant did knowingly and willfully fail to file with the Commissioner of the IRS an FBAR disclosing that he had a financial interest in, and signature and other authority over, a bank, securities, and other financial account in a foreign country, to wit, at least one foreign bank, securities, and other financial account at UBS, Credit Suisse, or Israeli Bank A, which had an aggregate value of more than $10,000 during each of the years listed below:

///

///

| Calendar Year | Due Date to File FBAR | Banks |
|---|---|---|
| 2006 | June 30, 2007 | UBS and Credit Suisse |
| 2007 | June 30, 2008 | UBS and Credit Suisse |
| 2008 | June 30, 2009 | UBS, Credit Suisse and Israeli Bank A |
| 2009 | June 30, 2010 | Credit Suisse and Israeli Bank A |

///

///

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.


_David Azarian_                         10/10/2016

DAVID SHAHROKH AZARIAN                   Date
Defendant

25

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am DAVID SHAHROKH AZARIAN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, no promises, inducements, or representations of any kind have been made to my clients other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

EDWARD M. ROBBINS, JR., Esq.
Attorney for Defendant
DAVID SHAHROKH AZARIAN

10/10/2016
Date

26